# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information about the location of the cellular telephone
assigned call number 414-610-8411, as further
described in Attachment A

)
)
)
)
)
)

Case No.  24  MJ  49

Matter No. 2023R00416

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 843(b); 841(a)(1); & 846; and 18 U.S.C. § 924(c) | Use of a communication device in furtherance of drug trafficking; Possession with intent to distribute and distribution of a controlled substances; Conspiracy to do the same; and Possession of a firearm in furtherance of drug trafficking. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ALEX OTOOLE (Affiliate) Digitally signed by ALEX OTOOLE (Affiliate)
Date: 2024.01.25 15:07:41 -05'00'

*Applicant's signature*

Alex O'Toole, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:  01/26/2024

*Judge's signature*

City and state:  Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter Number 2023R416

I, Alex O'Toole, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for an extension of a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-610-8411** (the "Target Cell Phone"), whose service provider is Verizon ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

1

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.      I am a Task Force Office with the Drug Enforcement Administration, (DEA) and have been since January 2022.  Before that, I was employed as a deputy sheriff with the Waukesha County Sheriff Office (WKSO) in Waukesha, Wisconsin, where I spent the last 7 years as a Detective in our detective bureau with the focus on financial and major crimes.  During my tenure as a police officer, I have been involved in multiple drug related investigations to include but not limited to sale, distribution, and Len bias homicides.  As a member of DEA, I worked investigations directly in the City of Milwaukee and the State of Wisconsin as well as the entire United States based upon the direction of the investigations that arise through the Milwaukee District Office (MDO) of the DEA.

5.      As a federal law enforcement officer, I have participated in the investigation of narcotic related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacturing, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances.  I have participated in all aspects of drug investigations including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretaps, analysis of phone records, analysis of electronic devices, financial records informant handling and the arrest of numerous drug traffickers.  I have authored many search warrants during my tenure as a law enforcement officer.  I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic,

Case 2:24-mj-00049-WED   Filed 01/26/24   Page 3 of 14   Document 1

concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking – derived proceeds. I am aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activity.

6. Based on my training, experience, as well as information relayed to me during the course of official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, fentanyl and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest borders of the United States, because Mexican cartels control the transportation, sale, and importation of marijuana, cocaine, heroin, fentanyl, and methamphetamine into the United States.

7. Based on my training, experience, and conversations with other law enforcement officers, I know that the distributors of marijuana, cocaine, heroin, fentanyl, and methamphetamine as well as other controlled substances, often used cellular and landlines telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know drug traffickers often conduct extensive counter – surveillance to avoid law enforcement detection.

8. Based on my training and experience, I know that narcotic trafficking and money laundering organizations routinely used several operational techniques to sustain their illegal enterprises. There practices are designed and implemented to achieve two paramount goals: First,

Case 2:24-mj-00049-DWC SEALED Filed 01/26/24 Page 4 of 14 Document 1

the successful facilitation of the organization's illegal activities including the importation and distribution of controlled substances and the subsequent repatriation of the proceeds of that illegal activity; and second, the minimization of the exposure of the coconspirators, particularly those operating in leadership roles, from investigations and prosecution by law enforcement. More specifically, based on training and experience, I know the following:

a. Sophisticated drug trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of the operations reduces the amount of knowledge possessed by each member of the organization. This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of the particular law enforcement actions against the organization.

b. Members of these organizations routinely used communications facilities, such as cellular telephones to communicate directions and information about the organization's illegal activities to other organization members.

c. During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

d. The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities. The critical nature of this information stems from the necessity of the organization's leadership to provide direction from the importation and distribution of narcotics and subsequent laundering of the proceeds of those activities.

e. Drug traffickers and money launderers associated with them often confine their illegal telephonic communications to long – trusted organizational members and high – level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations; and

f. Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detections from law enforcement.

g. Drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often time's members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person. This protects the trafficker from law enforcement investigations as they do

Page 4

not have illegal controlled substances on them after the delivery is made. Often time the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

9.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

10.     The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. Throughout this affidavit reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation and whom I have had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code,

Sections 841 and 846; and possession of a firearm in furtherance of drug trafficking, violation of Title 18, United States Code Section 924(c), have been committed by Kenneth D. SIMMONS, Jaeheim H. ROBINSON, George TORRES and other known and unidentified subjects.

12.     There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.     JURISDICTION

13.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## III.     PROBABLE CAUSE

14.     The United States, including, DEA, is conducting a criminal investigation into Kenneth D. SIMMONS and Jaheim H. ROBINSON and other unidentified subjects for possible violations of 21 U.S.C. §§ 841(a)(1), 843, and 846 and Title 18 U.S.C. § 924(c).

### A.     Background

15.     In August of 2023, DEA and ATF began investigation a subject identified as Kenneth D. SIMMONS, DOB: XX/XX/2005, who was believed to be engaged in the trafficking of controlled substances, specifically fentanyl, in southeastern Wisconsin.

16.     In February of 2023, ATF SA ███████ (who will be referred to as UC throughout the affidavit) while working in an undercover capacity, was conducting an investigation in a separate matter. While conducting the investigation, UC was approached by two black males. The two males offered to sell illegal narcotics to UC. At this time, UC was passed a number to call if interested and one of the males identified himself as "Lil Man." The phone number provided was telephone number 414-313-7029.

17. In March of 2023, UC contacted the telephone number 414-313-7029 and set up a drug transaction to purchase fentanyl from "Lil Man."

18. On March 7, 2023, UC contacted telephone number 414-313-7029 to purchase fentanyl. UC went to the meet location, which was in the Eastern District of Wisconsin. UC met with an individual later identified by the UC through a booking photo as Kenneth D. SIMMONS, DOB: XX/XX/2005. Case agents were actually familiar with SIMMONS based on past criminal contacts. Case agents were aware, based on law enforcement databases and review of social media, that SIMMONS was also associated with the gang Brothers Before Millions (BBM).

19. SIMMONS provided the UC with 4.2 grams of suspected fentanyl for $200 Following the undercover buy, case agents field tested the suspect substance, which tested positive for fentanyl.

20. Based on the investigation and other department matters, UC did not conduct further controlled buys with SIMMONS over the next couple of months and stopped communicating with telephone number 414-313-7029.

21. In May of 2023, UC received a text from telephone number 414-610-1200 and the sender identified themselves as "Lil Man." Based on the prior communication and controlled buy with the UC, case agents believed was SIMMONS. SIMMONS advised UC that SIMMONS had a sample of new stuff for UC to try. Based on my training and experience, I believe this message was regarding SIMMONS have a new supply of fentanyl and SIMMONS was attempting to sell fentanyl to UC. During this text message conversation, "Lil Man" stated he also had a second number in which the UC could contact, which was 414-313-7029.

22. In August of 2023, UC continued contacting telephone number 414-610-1200, believed to be used by SIMMONS based on the investigation. SIMMONS continued to tell UC that SIMMONS could sell illegal narcotics, specifically fentanyl. UC continued contact with

Case 2:24-mj-00049-WED  Filed 01/26/24  Page 8 of 14  Document 1

telephone number 414-610-1200 and arranged a transaction to purchase fentanyl.

### B. Controlled Buys

23. Generally, during the below listed controlled buys of controlled substances and the previously discussed controlled buy, the CS and/or UC placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements were reviewed and verified by law enforcement. Specific to the CS, the CS was searched before and after the controlled purchase with no drugs, money, or weapons located. Additionally, the controlled substances were all weighed; tested, following the printed instructions on the field test; tested positive for the listed substance; and the target(s) were identified by the CS/UC and verified by investigators through DOT photographs, booking photos, and social media.

### a. First Drug Transaction with SIMMONS and ROBINSON – Telephone Number 414-610-1200 – September 12, 2023

24. UC had coordinated an undercover purchase of fentanyl with telephone number 414-610-1200, believed to be used by SIMMONS. The UC and SIMMONS agreed to purchase 3.5 grams of fentanyl for $200.

25. On September 12, 2023, UC contacted SIMMONS at telephone 414-610-1200 to coordinate the purchase of fentanyl. UC was directed to meet at the KFC located at 1402 South 43rd Street, Milwaukee, Wisconsin. Prior to the drug transaction, case agents conducting physical surveillance observed a red Alfa Romeo with Wisconsin license plate ANV6749 in the KFC lot. UC arrived at the location. UC contacted telephone number 414-610-1200 and was directed to go into the Alfa Romeo. UC got into the back of the Alfa Romeo and observed SIMMONS was also sitting in the backseat of the Alfa Romeo. UC also observed a handgun in the middle of the

Case 2:24-mj-00049-WED Filed 01/26/24 Page 9 of 14 Document 1

backseat.  SIMMONS advised the gun was his and pulled it closer to him.  UC gave SIMMONS $200.00 and SIMMONS handed UC the suspected fentanyl.  UC then exited the Alfa Romeo and left the area.  Surveillance units remained in the area and observed SIMMONS after UC left the area.  Case agents observed two other unknown subjects approach the Alfa Romeo and have a short contact with the Alfa Romeo, as SIMMONS remained inside the Alfa Romeo.  Based on my training, experience, and investigation in this matter, these two short contacts were consistent with likely drug transactions.

26.     UC turned over the suspected fentanyl to case agents.  The substance was weighed, and field tested by case agents.  The substance weighted 4.1 grams and a positive test for fentanyl. The controlled substance was sent to the DEA Crime Lab for further testing.

27.     UC provide additional details regarding the undercover controlled buy.  UC stated that there were two other people in the Alfa Romeo.  Case agents reviewed video of the undercover buy and were able to identify the two other individuals as Jaheim H. ROBINSON, DOB: XX/XX/2003 (driver), and Kaliyah L. SMITH DOB: XX/XX/2003 (the front passenger) based on law enforcement databases.   The UC also identified ROBINSON as the other individuals inside the vehicle, after reviewing Department of Transportation (DOT) photo.

28.     Case agents reviewed Wisconsin DOT records for the license plate ANV6749.  The records indicated that the license plate was registered to a 2009 Black Hyundai Sonata to Myra I. Castro, DOB: XX/XX/2002.  This vehicle's registration expired on April 2, 2023, and was suspended due to emissions.  Based on my training and experience, those engaged in drug trafficking will often switch out license plates on vehicles used during their criminal conduct, in an attempt to evade law enforcement in identifying subjects or locations connected to the drug trafficking organization.

    **b.**    **Second Drug Transaction with SIMMONS and ROBINSON –**

Case 2:24-mj-00049-WED SEALED Filed 07/26/24 Page 10 of 51 Document 1

29.    On September 20, 2023, UC coordinated an undercover purchase of ½ ounce of fentanyl for $750 from telephone number 414-313-7029, believed to be used by SIMMONS, based on the text message conversation in May 2023.

30.    On September 21, 2023, UC contacted telephone number 414-610-1200, believed to be used by SIMMONS, and arranged for the drug transaction to occur at 3815 North 54th Boulevard. Milwaukee, Wisconsin.  UC arrived at the location and parked in front of 3815 North 54th Boulevard. Milwaukee, Wisconsin.   Case agents observed a gray Honda Accord with Wisconsin license plate ARJ6235.  The Honda Accord pulled next to UC's undercover vehicle. Case agents observed ROBINSON was driving the Honda Accord and SIMMONS was the back passenger.  During the drug transaction, ROBINSON handed UC the suspected fentanyl and UC handed ROBINSON $750.00.  UC then left the area.  Case agents were able to follow SIMMONS and ROBINSON to a Wendy's in the area of North 6th Street and West North Avenue, in Milwaukee, Wisconsin.  Case agents lost the Honda Accord after it left Wendy's and surveillance was terminated.

31.    Following the undercover drug transaction, UC turned over the suspected fentanyl to case agents.  The controlled substance was sent to the DEA Crime Lab for testing.  The DEA Crime Lab indicated the substance weighed 12.2 grams and was fentanyl and heroin.

32.    Case agents reviewed Wisconsin DOT records for license plate ARJ6235.  The records indicated the license plate was registered to a 2020 Honda Accord to Kaliyah L. Smith DOB: XX/XX/23 with an address of 4910 North 58th Street, Milwaukee, Wisconsin.  Case agents also identified SMITH as being in the vehicle from the first buy on September 12, 2023.

      c.      **Third Drug Transaction with SIMMONS – Telephone Number 414-610-1200 – September 26, 2023**

33.     UC had coordinated an undercover purchase of 1 ounce of fentanyl for $1400 from telephone number 414-610-1200, believed to be used by SIMMONS.

34.     On September 26, 2023, UC contacted telephone number 414-610-1200 to confirm the transaction.  UC believed SIMMONS was using telephone number 414-610-1200.  SIMMONS instructed UC to go to the same place as the last time, and gave an address of 3815 North 54th Boulevard, Milwaukee, Wisconsin.

35.     Case agents conducted physical surveillance around 3815 North 54th Boulevard, Milwaukee, Wisconsin prior to the undercover buy.  UC arrived at 3815 North 54th Boulevard, Milwaukee, Wisconsin, pulled down the alley of the residence, and parked in the back of the residence.  Case agents observed the Alfa Romeo, from the first deal on September 12, 2023, parked on the back slab of the residence, next to the garage.  Case agents observed SIMMONS come from the south/back of the residence and enter into UC's undercover vehicle.  Once inside the vehicle, SIMMONS handed UC the suspected fentanyl and UC handed SIMMONS $1500.00.  The UC provide SIMMONS with an extra $100, as a "thank you" for keeping business going and in hopes of maintaining a good connection and building trust with SIMMONS.  SIMMONS exited the undercover vehicle and returned back to the back side of the residence at 3815 North 54th Boulevard, Milwaukee, Wisconsin.  Case agents around the house did not see SIMMONS arrive or leave the residence prior or after the deal.  UC left the area and turned over the suspected fentanyl to case agents.

36.     The substance weighed 24.5 grams and field tested positive for fentanyl.  The controlled substance was sent to the DEA Crime Lab for further testing.

### d.     Fourth Drug Transaction with SIMMONS and ROBINSON – Telephone number 414-610-1200 – November 1, 2023

37.     During the investigation into the armed drug trafficking organization (ADTO), case

agents became aware of a CS that could purchase controlled substances from SIMMONS.

38.     The CS advised law enforcement that the CS had a number he/she could buy into and provided the telephone number 414-610-1200.  The CS indicated "lil digg" was the person that used telephone number 414-610-1200 and the "lil digg" would sell crack cocaine and fentanyl using telephone number 414-610-1200.  Based on the investigation and following the controlled buy, case agents verified "lil digg" was SIMMONS.

39.     CS described SIMMONS as a younger black guy and stated he always has another younger black guy with him.  CS also indicated SIMMONS and the other younger black guy used a vehicle consistent with the Alfa Romeo.   CS stated it had been a few months since CS dealt with SIMMONS.

40.     The CS information is credible and reliable because the CS is providing information based on CS personal knowledge and observations.  Additionally, the CS's information has been corroborated by other sources during this investigation and supported by surveillance and call detail records.  CS is cooperating voluntarily and does not have any pending criminal charges. CS is receiving monetary payments for his/her cooperation.  CS has criminal charges for Disorderly Conduct, Issuing Worthless Checks, Forgery, Theft, Operate Vehicle Without Owner's Consent, Manufacture Deliver Cocaine, and Possession of Cocaine.

41.     Based on the CS indicating he/she could purchase crack cocaine and fentanyl from SIMMONS, members of DEA and members from City of Waukesha Police Department conducted a controlled purchase of 1 gram of crack cocaine and 1 gram of fentanyl from SIMMONS and ROBINSON.

42.     Prior to November 1, 2023, at the direct of case agents, the CS coordinated a controlled purchase of 1 gram of crack cocaine and 1 gram of fentanyl from SIMMONS for $150.

43.     On November 1, 2023, CS placed a recorded phone call to telephone number 414-

Case 2:24-mj-00049-WED FILED 01/26/24 Page 13 of 51 Document 1

610-1200, believed to be used by SIMMONS, to coordinate a purchase of $100 of crack cocaine and $50 of fentanyl. SIMMONS told the CS to go to the area of North 54th Street and West Capitol Drive, Milwaukee, Wisconsin. SIMMONS called the CS on the way to the deal from telephone number 414-610-1200. SIMMONS advised the CS to go to the alley behind 3815 North 54th Boulevard, Milwaukee, Wisconsin.

44. CS pulled down the alley and parked one house to the north of 3815 North 54th Boulevard, Milwaukee, Wisconsin. Case agents observed the same Alfa Romeo from the September 12, 2023, undercover drug purchase parked on the slab next to the garage of 3815 North 54th Boulevard, Milwaukee, Wisconsin.

45. CS contacted telephone number 414-610-1200, believed to be used by SIMMONS, while in the alley. SIMMONS told the CS that he was coming out. CS observed SIMMONS walk out of the back of the residence of 3815 North 54th Boulevard, Milwaukee, Wisconsin and walk towards the garage. CS then pulled up behind 3815 North 54th Boulevard, Milwaukee, Wisconsin. SIMMONS walked on the north side of the garage. SIMMONS contacted the CS and handed the CS the suspected crack cocaine. SIMMONS told the CS that SIMMONS just ran out of "boy" and that SIMMONS's brother was on his way to serve the CS. Based on my training and experience, "boy" is a street name used by drug traffickers for fentanyl.

46. CS handed SIMMONS $100 for the crack cocaine. CS then moved out of the alley and parked onto Vienna Street between North 54th Boulevard and North 55th Street. SIMMONS went back into 3815 North 54th Boulevard, Milwaukee, Wisconsin. Approximately five minutes later the CS contacted SIMMONS using telephone number 414-610-1200 to determine SIMMONS brother's location. SIMMONS was speaking with CS using telephone number 414-610-1200 and appeared to use a second telephone to contact his "brother" to determine his "brother's" location. A little while later, a gray Nissan Altima with Illinois license plate Y939455

Case 2:24-mj-00049-WED-WED SEALED Filed 07/26/24 Page 14 of 51 Document 1

(Nissan Altima) pulled next to the CS. The CS entered the Nissan Altima to conduct the deal. In the back passenger was a subject, later identified as ROBINSON. ROBINSON handed the CS the suspected fentanyl and the CS handed ROBINSON $50. The CS and ROBINSON then left the area.

47. Following the controlled buy, the CS met with case agents and turned over the suspected crack cocaine and fentanyl. The CS was debriefed and showed a picture of SIMMONS and ROBINSON and the CS was able to positively identify both SIMMONS and ROBINSON. The suspected fentanyl weighed 1.7 grams and field tested positive for fentanyl. The suspected crack cocaine weighed 1.4 grams and field tested positive for cocaine. The controlled substances were sent to the DEA Crime Lab for further testing.

48. Following the controlled buy between ROBINSON and the CS, other case agents followed the Nissan Altima to McDonalds located at 1120 Miller Parkway, West Milwaukee, Wisconsin. At the McDonalds, case agents observe ROBINSON have a short contact an unidentified white male. Based on my training, experience, and investigation, I believe this short contact was consistent with a drug transaction. Following this suspected drug transaction, the Nissan Altima then left McDonalds. Case agents then lost sight of the Nissan Altima while attempting to conduct surveillance.

49. Case agents reviewed DOT records for the Illinois license plate Y939455. The plate was registered to a 2015 Gray Volkswagen to Geneva M. OATMAN out of Chicago, IL. Illinois license plate Y939455 did not match the vehicle that was being driven during the controlled buy. As previously noted, based on my training and experience, this is a technique used by drug traffickers in an attempt to prevent law enforcement from identifying individuals engaged in criminal conduct or location associated with drug traffickers.

   e.    **Fifth Drug Transaction with SIMMONS – Telephone number 414-610-**

Case 2:24-mj-00049-WED Filed 01/26/24 Page 15 of 51 Document 1

50.     On November 8, 2023, CS placed a recorded phone call to telephone number 414-610-1200, believed to be used by SIMMONS, to coordinate a purchase of $100 of crack cocaine and $50 of fentanyl.  SIMMONS told the CS to go to the area of North 54th Boulevard and West Villard Street, Milwaukee, Wisconsin, in the alley.

51.     CS pulled down the alley and parked behind the garage of 3815 North 54th Boulevard, Milwaukee, Wisconsin.   Case agents observed the same Alfa Romeo from the September 12, 2023, undercover drug purchase parked on the slab next to the garage of 3815 North 54th Boulevard, Milwaukee, Wisconsin.

52.     CS contacted telephone number 414-610-1200, believed to be used by SIMMONS, while in the alley multiple times.  SIMMONS kept asking the CS what he/she was looking to purchase.  CS stated multiple time $100 of "girl" and $50 of "boy."  Based on my training and experience, "girl" is a street term used by drug traffickers and users for cocaine and "boy" is a street term used by drug traffickers and users for heroin.  CS observed SIMMONS walk out of the back of the residence of 3815 North 54th Boulevard, Milwaukee, Wisconsin and walk towards the garage.  SIMMONS walked from the north side of the garage.  SIMMONS contacted the CS and handed the CS the suspected crack cocaine and fentanyl.  CS provided SIMMONS with the buy money and had SIMMONS count the money.  SIMMONS stated it was all there.  SIMMONS then walked to the north side of the garage and back into 3815 North 54th Boulevard.

53.     Following the controlled buy, the CS met with case agents and turned over the suspected crack cocaine and fentanyl.  The CS was debriefed and showed a picture of SIMMONS and the CS was able to positively identify SIMMONS.  The suspected fentanyl weighed 1.0 grams and field tested positive for fentanyl.  The suspected crack cocaine weighed 1.2 grams and field

Case 2:24-mj-00049-WED   Filed 01/26/24   Page 16 of 51   Document 1

tested positive for cocaine. The controlled substances were sent to the DEA Crime Lab for further testing.

54.    Following the controlled buy, case agents continued conducting surveillance members in the area of 3815 North 54th Boulevard, Milwaukee, Wisconsin. Case agents observed a silver Lexus with Wisconsin license plates ALY1914 pull up in front of the residence and a black female went in the front door. No other people came or went from the residence for 25 minutes and surveillance was terminated.

55.    Case agents reviewed DOT records for the Wisconsin license plate ALY1914. The plate was registered to a 2017 silver Lexus to ████████████████ (DOB XX/XX ████ with an address of ████████████ Milwaukee, Wisconsin.

### f.    Sixth Drug Transaction with SIMMONS – Telephone number 414-610-1200 and 414-313-7029 – December 5, 2023

56.    On December 5, 2023, UC coordinated an undercover purchase of 1 ounce of fentanyl for $1400.00 from telephone number 414-313-7029, believed to be used by SIMMONS. 2023.

57.    On December 5, 2023, around 1:59 p.m., UC contacted telephone number 414-610-1200, believed to be used by SIMMONS. During that recorded phone call SIMMONS stated that his phone was messed up (referring to telephone number 414-610-1200) and for the UC to call his other line, 414-313-7029. UC contacted SIMMONS at approximately 2:00 p.m. on the other telephone number 414-313-7029 and arranged for the drug transaction. The last buy that the UC conducted with SIMMONS for an ounce on September 26, 2023, SIMMONS gave the UC only 25 grams. UC asked SIMMONS if SIMMONS was good for $1400.00 for 28 grams. Case agents could hear on the telephone SIMMONS asking another person if they were good for 28 grams for $1400.00. Based on my training, experience, and investigation into the ADTO, case agents believe

SIMMONS was speaking with ROBINSON, who previously provided heroin/fentanyl to the UC on behalf of SIMMONS. SIMMONS then responded to the UC, that was good. UC and SIMMONS agreed to meet at KFC on Miller Parkway in West Allis, Wisconsin. KFC is the same spot that the UC conducted a deal on September 12, 2023, with SIMMONS.

58. At 2:32 p.m., UC arrived at KFC and called SIMMONS on telephone number 414-313-7029. SIMMONS directed the UC to an address of 3831 North 13th Street, Milwaukee, Wisconsin. The UC arrived at that location and parked in front of 3831 North 13th Street. UC contacted SIMMONS on telephone number 414-313-7029 and told SIMMONS the UC arrived. SIMMONS stated that he was just about to pull up. At 2:58 p.m., case agents observed a Honda Accord, previously used by SIMMONS on the September 21, 2023, drug transaction. The Accord pulled next to UC's undercover vehicle. Case agents observed ROBINSON was driving the Accord and SIMMONS was the passenger. During the drug transaction, ROBINSON handed UC the suspected fentanyl and UC handed ROBINSON $1500.00. UC gave $100.00 to ROBINSON and SIMMONS as a "thank you" for doing business. UC talked to ROBINSON and SIMMONS and asked if the UC wanted to go up to 2,3,4 ounces, would the UC still call ROBINSON and SIMMONS. Robinson and SIMMONS responded with, yes and shaking their head in relation to their response. After the conversation the UC then left the area. Case agents were not able to follow the Accord.

59. Following the undercover drug transaction, UC turned over the suspected fentanyl to case agents. The substance was weighed, and field tested by case agents. The substance weighed 29.6 grams and a positive test for fentanyl. The controlled substance was sent to the DEA Crime Lab for further testing.

> **g.** **Seventh Drug Transaction with SIMMONS – Telephone number 414-610-1200– December 19, 2023**

Case 2:24-mj-00049-WED SEALED Filed 07/26/24 Page 18 of 51 Document 1

60.     On December 19, 2023, UC coordinated a controlled buy of 2 ounce of fentanyl for $2800.00 from telephone number 414-610-1200, believed to be used by SIMMONS.

61.     On December 19, 2023, UC contacted telephone number 414-610-1200, believed to be used by SIMMONS.  UC asked SIMMONS if SIMMONS was good for $2800.00 for 2 ounces.  SIMMONS asked what SIMMONS charged the UC last time.  UC stated $1400.00, and SIMMONS agreed to the $2800.00.  SIMMONS then advised the UC to go to the Southside and call SIMMONS when the UC is in the area.  A short time later the UC was directed to South 3rd Street and East Howard Avenue, Milwaukee, Wisconsin.

62.     At approximately 10:58am, the UC arrived on at the meet location of South 3rd Street and East Howard Avenue.  The UC parked in front of 3914 South 3rd Street, Milwaukee, Wisconsin.  As the UC was parking, the UC placed a phone call to SIMMONS at telephone number 414-610-1200.  SIMMONS directed the UC to Beecher.  UC stated they would just wait for SIMMONS at South 3rd Street and East Howard Avenue.  SIMMONS agreed and stated SIMMONS would be there in several minutes.  At approximately 11:15am the UC received a phone call telephone number 414-610-1200, from SIMMONS while a silver BMW, with New Jersey license plates F35LPT (BMW) pulled onto South 3rd Street and pulled next to the UC.  Case agents are familiar with the BMW as this is the vehicle that picked up SIMMONS on December 15, 2023, described in more detail below.

63.     The UC was then directed to follow the BMW to South 2nd just south of East Howard Avenue.  The UC then got into the back passenger side of the BMW.  Inside the BMW was the driver, later identified as George TORRES by previous knowledge of the UC and department of transportation photo.  The front passenger was SIMMONS. SIMMONS handed the 2 ounces to the UC and the UC turned over the $2800.00.  The bag that was produced was ripped and fentanyl was falling out.  TORRES took the bag and re-packaged it and turned it over to the

UC. The UC stated that the fentanyl the UC previously purchased was white and this is brown. TORRES then responded with, "It ain't gonna change. It's gonna be always [high quality]. SIMMONS then echoed TORRES statement.

64. After the deal the UC left the area. Case agents attempted to follow the BMW. Case agents followed the BMW west on East Howard Avenue and turn north on I-43. The BMW exited at National Avenue, but due to the driving behavior case agents were not able to see which way the BMW went on National Avenue and lost the BMW. Surveillance was terminated at this time.

65. Following the undercover drug transaction, UC turned over the suspected fentanyl to case agents. The substance was weighed, and field tested by case agents. The substance weighed 56.8 grams and a positive test for fentanyl. The controlled substance was sent to the DEA Crime Lab for further testing.

66. Case agents reviewed law enforcement databases, which indicated the BMW's New Jersey license plates F35LPT is registered to a 2018 Nissan Maxima to Maxx S. Levatino with an address of 39 Dehart St. Morristown, New Jersey.

h. **Eight Drug Transaction with SIMMONS – Telephone number 414-610-1200– January 16, 2024**

67. On January 16, 2024, UC coordinated an undercover purchase of 2 ounce of fentanyl for $2800.00 from telephone number 414-610-1200, believed to be used by SIMMONS.

68. On January 16, 2024, UC contacted telephone number 414-610-1200, believed to be used by SIMMONS. UC asked SIMMONS if SIMMONS was good for $2800.00 for 2 ounces. SIMMONS agreed and stated, "same as last time". SIMMONS then advised the UC to go to the Southside and call SIMMONS when the UC is in the area. A short time later, telephone number 414-610-1200 contacted the UC, who was directed to 742 West Reservoir Street, Milwaukee,

Case 2:24-mj-00049-WED *SEALED* Filed 01/26/24 Page 20 of 51 Document 1

Wisconsin. At approximately 11:15am, the UC arrived on at the meet location and parked in front of 744-746 West Reservoir Street. As the UC was parking, the UC placed a phone call to telephone number 414-610-1200 and SIMMONS stated he was at 14th and Reservoir.

69.     At approximately 11:30am, case agents were able to see SIMMONS walk out the back door to his residence at 3815 North 54th Boulevard. Milwaukee, Wisconsin, towards the alley. At this time case agents reviewed the ping for phone number 414-610-1200, and it put SIMMONS near his residence.

70.     At approximately 11:35am the UC received a phone call from telephone number 414-610-1200, believed to be SIMMONS, to see where the UC was located. At approximately 11:38am, a black Mercedes was travelling northbound on West Reservoir towards the UC and pulled next to the UC. The Mercedes had Wisconsin license plates 423EZX (Mercedes). It should be noted that case agents are familiar with the Mercedes. During physical surveillance, case agents observed the Mercedes pick up SIMMONS on multiple days, the latest being January 10, 2024. The Mercedes pulled next to the UC and the driver of the Mercedes, George TORRES, handed the UC the suspected fentanyl. The UC then handed TORRES the $2800.00. The front passenger of the Mercedes was SIMMONS. The deal was quick and only lasted about 30-45 seconds.

71.     After the deal the UC left the area. Case agents followed the Mercedes to the area between 17th and 18th Street, Milwaukee, Wisconsin in the alley. Case agents observed a male wearing a high visible vest. The male subject came to the driver's side of the Mercedes and had a short-term contact, which based on my training and experience, was consistent with a drug transaction. Due to the location of the suspected drug transaction, case agents were not able to see which house the male subject came out of.

72.     Case agents then followed the Mercedes to the area of South 3rd Street, just south of Morgan Avenue, Milwaukee, Wisconsin. Case agent then observed what appeared to be a hand-

Case 2:24-mj-00049-WED ALE Filed 01/26/24 Page 21 of 51 Document 1

to-hand transaction with a blue dodge ram, through the vehicles' windows. Based on my training and experience, this hand-to-hand window transaction was consistent with a drug transaction.

73. Case agents then followed the Mercedes to a BP gas station on Wilbur Street and Howell Street, Milwaukee, Wisconsin. Prior to going to the gas station, the Mercedes was making a bunch of U-turns and driving in a way, based on my training and experience, would be consistent with an attempt to conduct counter surveillance to see who is following them. I am aware this is a common technique used by drug traffickers in an attempt to determine if law enforcement or possible drug rivals are following them. Case agents terminated surveillance at that point.

74. Following the undercover drug transaction, UC turned over the suspected fentanyl to case agents. The substance weighed 57.2 grams and a field tested positive for fentanyl. The controlled substance was sent to the DEA Crime Lab for further testing.

75. Case agents are familiar with the Mercedes based on prior surveillance. The Mercedes registration comes back to no vehicle associated and expired in 2010. Based on my training and experience, it is common for drug traffickers to use license plates not associated or registered to a vehicle in an attempt to evade law enforcement.

### D. ADTO Telephone Numbers

76. Case agents, through administrative subpoenas, determined telephone number 414-610-1200 has a service provider of AT&T. Telephone numbers 414-610-1200 has a subscriber of Dish Wireless LLC and has been a customer since May 2023, which is around the time the UC received a text message from "Lil Man."

77. Case agents, through administrative subpoenas, determined telephone number 414-313-7029 has a service provider of T-Mobile. Telephone number 414-313-7029 and has no subscriber information. Based on my training and experience, I am aware that drug traffickers may not provide subscriber information for telephones being used for their drug business in an

attempt to evade law enforcement.

78.     Case agents reviewed call detail records for telephone numbers 414-610-1200 and telephone number 414-313-7029.  Both telephone number 414-313-7029 and 414-610-1200 have a frequent caller with telephone number 414-303-2431.   Case agents, through administrative subpoenas, determined that telephone number 414-303-2431 has a service provider of US Cellular and the listed subscriber is ███████.  Based on review of law enforcement databases, case agents identified ███████ as SIMMONS's mother.

79.     While reviewing the telephone numbers associated with the subscriber for telephone number 414-303-2431 (███████), the telephone number 414-651-1315 was also provided as belonging to ███████ with US Cellular as the service provider.

80.     Case agents searched for possible record jail calls to telephone number 414-651-1315, which was associated with SIMMONS's mother.  Case agents located 23 recorded jail calls in September 2023 between telephone number 414-651-1315 and two inmate ID numbers, ███████, and ███████.  Based on review of the jail calls, which included the content of the discussions and the voices of the callers, the case agent believed ███████ was likely using ███████ inmate ID number to make calls to 414-651-1315.  ███████. was convicted of possession with intent to deliver fentanyl, use of a dangerous weapon; possession of a firearm by an adjudicated delinquent; possession with intent to deliver cocaine, party to a crime; and fleeing in Milwaukee County Cases ███████ and ███████ on ███████  The case agent reviewing these 23 jail calls identified SIMMONS by his voice, which the case agent was aware of based on prior record calls with the UC and CS with SIMMONS, as well as review of video and audio from the controlled drug buys with SIMMONS.  Based on law enforcement databases, public viewable social media and law enforcement intel, case agents believe that SIMMONS and ███████. are close friends, and both are part of Brother Before Millions (BBM).

For example, on a public viewable Instagram account, case agents located a photo with SIMMONS and ▮▮▮▮▮▮ together. They are showing their forearm in the photo, in which they have matching tattoos.

81.     Case agents, through administrative subpoenas, determined telephone number **414-610-8411** has a service provider of US Cellular. Telephone numbers **414-610-8411** has a subscriber of Sam Doe and has been a customer since January 2023. Based on my training and experience, I am aware that drug traffickers may not provide subscriber information or fictitious names and addresses for telephones being used for their drug business in an attempt to evade law enforcement.

82.     Case agents reviewed call detail records for telephone number **414-610-8411** and has a frequent caller with telephone number 414-651-1315, which this number is known to case agents and is used by Kenneth SIMMONS, as described previously.

83.     Case agents reviewed call detail records for telephone numbers **414-610-8411** and observed that the number one frequent caller was with telephone number 414-882-9322. Case agents, using law enforcement data bases show that telephone number 414-882-9322 belongs to ▮▮▮▮▮▮. Based on review of law enforcement databases, case agents identified ▮▮▮▮▮▮ as TORRES girlfriend/child's mother.

84.     Case agents reviewed DOT records and publicly viewable Facebook page for ▮▮▮ ▮▮▮▮ Case agents were able to see that there are pictures between the two of them to confirm that they are or were a couple. The last photo of them together that case agents are able to see is from May 31, 2021. Case agents were also able to see on a law enforcement database that there is a 2018 Paternity case identified as Milwaukee County Case 2018PA2934PJ where ▮▮▮ ▮▮▮▮ and George TORRES are listed as the mother and father of having a child together.

85.     While using law enforcement data bases there are multiple jail calls to from **414-**

Case 2:24-mj-00049-WED *SEALED* Filed 07/26/24 Page 24 of 51 Document 1

**610-8411** to an inmate ID ███████ identified as ████████████. The latest of phone calls to ████████ as of December 25, 2023. It should be noted that ████████████. and TORRES are half-brothers, which was determined by case agents based on a prior drug investigation of ████████████.

86. Case agents also reviewed a jail call between telephone number **414-610-8411** and inmate ████████ from January 16, 2023, the same day as the undercover controlled buy with SIMMONS and TORRES. The UC listened to the jail call and recognized TORRES's voice as the caller of telephone number **414-610-8411.** Also, during the call, TORRES states to ███ that he is with "Lil Weez", which is a known nickname for SIMMONS.

87. Based on my training, experience, and investigation into the ADTO, it is believed that TORRES is the user of telephone number **414-610-8411.** This is based on the call detail records between telephone number **414-610-8411** and SIMMONS's telephone 414-651-1315 and between telephone number **414-610-8411** and TORRES's child's mother's telephone number 414-882-9322. Also, this is based on the jail calls with telephone number **414-610-8411.**

88. TORRES has been seen driving two different cars during surveillance. Case agents observed TORRES driving the BMW with New Jersey license plate F35LPT (BMW). The BMW license plate which does not come back to the correct vehicle and case agents have not seen this vehicle since January 6, 2024. Case agents have recently observed TORRES driving a black Mercedes SUV with Wisconsin plated 423EZX (Mercedes), which also does not come back to the correct vehicle. All of the listed addresses from all law enforcement data bases have not seen the Mercedes or where TORRES could be living.

89. On January 19, 2023, Honorable Judge William E. Duffin authorized the electronic surveillance for telephone number **414-610-8411**, which was then served on the provided US Cellular. On January 23, 2024, case agents were notified by US Cellular that telephone number

**414-610-8411** was ported (transferred service) to Verizon on January 22, 2024. Case agents did not receive any data from US Cellular after this date.

90.     Case agents reviewed call detail records from telephone number 414-651-1315 believed to be used by Kenneth SIMMONS. Since January 22, 2024, case agents observed 21 contacts between telephone 414-651-1315 and telephone number **414-610-8411**. Case agents also reviewed call detail records for telephone number 414-316-0470, believed to be used by Jaheim ROBINSON. Since January 22, 2024, case agents observed 1 contact between telephone number 414-316-0470 and telephone number **414-610-8411**. Based on my training, experience, and investigation into the ADTO, including the call detail records, I believe that TORRES is still using telephone number **414-610-8411** and that electronic surveillance of telephone number **414-610-8411** will provide evidence of his and the ADTO's drug trafficking and other criminal conduct.

**E.     Social Media accounts**

91.     Case agents searched public social media for members of the ADTO. Case agents located a Facebook page for Jaheim ROBINSON. The Facebook page has the name Heim Loww and the address bar for the page is Jaheimj.robinson.

92.     Case agents reviewed the public Facebook page and observed a post on September 16, 2023, four days after the undercover controlled buy in which ROBINSON was present. The September 16, 2023, post had multiple pictures of ROBINSON and with a lot of money and what appeared to be a handle of a firearm in his waist band (Figure 1). There were also photos of ROBINSON with SIMMONS (Figure 2). In this photo ROBINSON and SIMMONS were wearing a black sweatshirt with "BBM" Brothers Before Millions on the front, displaying a large amount of cash, and ROBINSON still had what appeared to be a handle of a firearm in his waistband. (Figure 2).

Case 2:24-mj-00049-WED SEALED Filed 01/26/24 Page 26 of 51 Document 1

 

(Figure 1)          (Figure 2)

93.     During the September 16, 2023, posts, there was another picture where a firearm, that appeared to have a machine-gun conversation device attached, was laying on money and it appeared SIMMONS and ROBINSON were standing above it, based on the shoes from the other photos (Figure 3).  Based on my training and experience, a machine-gun conversation device, also known as a switch, causes a semi-automatic firearm to become fully automatic firearm, meaning one pull of the firearm trigger would result in multiple rounds of ammunition being fired.



(Figure 3)

Page 26

94.	While looking at the pictures there are multiple posts and photos that would indicate that ROBINSON uses the page and that the page is active.  The most recent public post was on October 21, 2023.  Based on my training and experience, I am aware that drug traffickers will use apps such as Facebook to message rather than text to conduct their criminal conduct.  Drug traffickers will use such apps in an attempt to evade law enforcement.

### F.	Investigation into Telephone Number 414-316-0470

95.	Case agents were monitoring call detail records of telephone number 414-651-1315, believed to be used by SIMMONS based on subscriber information and record jail calls described previously.

96.	On December 5, 2023, case agents observed telephone number 414-651-1315 contacted 414-316-0470, believed to be used by ROBINSON, four times at 9:08 a.m.  At 9:27 a.m. telephone number 414-316-0470 calls telephone number 414-651-1315, believed to be used by SIMMONS.  Case agents also observed on December 5, 2023, between 9:42 a.m. and 10:03 a.m., there were multiple phone calls between telephone number 414-651-1315 and 414-316-0470.  After 10:03 a.m. there were no calls between telephone number 414-651-1315 and 414-316-0470.

97.	Case agents were also monitoring court authorized electronic surveillance for telephone number 414-610-1200, which was believed to be use by SIMMONS on December 5, 2023, based on the call with the UC.  Case agents observed that electronic surveillance placed telephone number 414-610-1200 in the area of 3815 North 54th Boulevard, Milwaukee, Wisconsin during the first calls with telephone number 414-346-0470.  Based on the prior controlled buys and investigation into the ADTO, case agents believe 3815 North 54th Boulevard, Milwaukee, Wisconsin is SIMMONS's residence.   Case agents also observed that shortly after the last call between telephone number 414-610-1200 and 414-316-0470, telephone number 414-610-1200 appeared to be traveling away from 3815 North 54th Boulevard, Milwaukee, Wisconsin, near 6th

Case 2:24-mj-00049-WED   Filed 01/26/24   Page 28 of 51   Document 1

Street and West Wisconsin Avenue. Based on the investigation into the ADTO, case agents believed that SIMMONS does not have his own vehicle, and that it was likely ROBINSON picked up SIMMONS at this point in the day.

98. Based on the telephone contacts between the UC and telephone number 414-610-1200 and 414-313-7029; the contacts between telephone number 414-651-1315 and 414-316-0470; and electronic surveillance of telephone number 414-610-1200, case agents believe SIMMONS contacted ROBINSON to assist in drug transactions on December 5, 2023. Further, case agents believe ROBINSON picked up SIMMONS around 10:03 a.m. (the time calls ended between 414-651-1315 and 414-316-0470), which is also consistent with ROBINSON being with SIMMONS at 2:00 p.m., when the UC verified SIMMONS had the correct amount of heroin to sell, and ROBINSON being with SIMMONS during the controlled buy. Based on my training and experience, this information is also consistent with ROBINSON likely using telephone number 414-316-0470.

### G. Additional Surveillance of SIMMONS

99. On December 13, 2023, case agents were conducting electronic and physical surveillance at 3815 North 54th Boulevard, Milwaukee, Wisconsin. At around 10:05 a.m., case agents observed SIMMONS get into the driver's seat of the Nissan Altima with Illinois license plate Y939455 and leave the area. This is the same vehicle that was used on the November 1, 2023, controlled buy, when ROBINSON was a passenger. Shortly before SIMMONS left the area, electronic surveillance of telephone number 414-610-1200 was consistent with the telephone being in the area of 3815 North 54th Boulevard. Case agents followed the Nissan Altima until it traveled southbound on Hwy175 in the left lane and then abruptly changed all lanes to get off at the Wisconsin Avenue exit. At 10:16am telephone number 414-610-1200 appeared to be in the area

of 35th Street and West State Street, Milwaukee, Wisconsin. Case agents later observed the Nissan Altima back at 3815 North 54th Boulevard at 1:19 a.m. on December 14, 2023.

100. On December 14, 2023, at 10:09 a.m., SIMMONS was observed leaving 3815 North 54th Boulevard, Milwaukee, Wisconsin in the Nissan Altima. SIMMONS was driving. Prior to leaving, based on review of call detail records, telephone number 414-651-1315 contacted ROBINSON's telephone number 414-316-0470. Based on review of electronic surveillance, telephone number 414-610-1200 appeared to be in the area of 3815 North 54th Boulevard. Case agents observed SIMMONS return to 3815 North 54th Boulevard at 1:32 p.m. SIMMONS then left again at 2:03 p.m. Shortly after SIMMONS left at 2:03 p.m., electronic surveillance was consistent with telephone number 414-610-1200 also leaving the area and traveling to the area on Lisbon Road and 21st Street, Milwaukee, Wisconsin around 2:11 p.m. The Nissan Altima returned to 3815 North 54th Boulevard for the night at 12:32 a.m. on December 15, 2023. Case agents reviewed electronic surveillance for telephone number 414-610-1200, which was consistent with the phone also being in the area of 3815 North 54th Boulevard during that time also.

101. On December 15, 2023, case agents were conducting surveillance at 3815 North 54th Boulevard, Milwaukee, Wisconsin. Case agents noted at 10:55 a.m., a silver BMW with New Jersey license plate F35LPT, parked in the back of 3815 North 54th Boulevard, but no one came out of the BWM. After about five minutes the BMW left the area. The BMW was registered to a 2018 Nissan Maxima, which did not match the BMW. At 11:02 a.m. SIMMONS was observed coming out the back door of 3815 North 54th Boulevard. SIMMONS unlocked the Nissan Altima and sat in the driver's seat. At 11:05 a.m. the same BMW came back to 3815 North 54th Boulevard. Case agents observed SIMMONS appear to lock the Nissan Altima. SIMMONS then got into the BMW and the BMW left the area. Case agents attempted to follow the BMW; however, because of driving behavior case agents were not able to follow the vehicle. At

approximately 10:51 a.m., electronic surveillance for telephone number 414-610-1200 was consistent with the phone being in the area of 3815 North 54th Boulevard. At 11:22 a.m. telephone number 414-610-1200 appeared to have been in the area of 51st Street and Lisbon Road, Milwaukee, Wisconsin.

102. Based on the above physical surveillance and review of electronic surveillance for telephone number 414-610-1200, case agents believe SIMMONS continues to possess and use telephone number 414-610-1200.

103. It should be noted that prior surveillance of SIMMONS was consistent with him not having a vehicle, but instead riding with others to conduct drug transactions. Beginning the week of December 10, 2023, case agents observed SIMMONS appear to be consistently operating the Nissan Altima, which was used previously during the November 1, 2023, controlled buy with ROBINSON. Based on surveillance of SIMMONS, specifically the observations of SIMMONS operating the Nissan Altima, including SIMMONS arriving later in the night (or early morning) at 3815 North 54th Boulevard, and leaving in the next morning, case agents believe SIMMONS is now using the Nissan Altima for his drug trafficking. SIMMONS has been seen driving the Nissan Altima several time, accessing the Nissan Altima, and the Nissan Altima has been parked in the back of his residence, 3815 North 54th Boulevard, Milwaukee, Wisconsin, several times.

104. Case agents were monitoring court authorized GPS tracking on the Nissan Altima and observed that on December 22, 2023, the Nissan Altima appeared to be parked at 637 West Bruce Street, Milwaukee, Wisconsin from 11:05 a.m.to 12:38 a.m. On December 24, 2023, the Nissan Altima appeared to be parked at 637 West Bruce Street, Milwaukee, Wisconsin from 1:32 p.m.to 11:49 p.m. On December 26, 2023, the Nissan Altima appeared to be parked at 703 West Bruce Street, Milwaukee, Wisconsin from 11:28 a.m.to 9:50 p.m. On December 27, 2023, the Nissan Altima appeared to be parked at 645 West Bruce Street, Milwaukee, Wisconsin from 10:58

Case 2:24-mj-00049-WED ALED 01/26/24 Page 31 of 51 Document 1

a.m. to 10:08 p.m.  On December 28, 2023, the Nissan Altima appeared to be parked at 703 West Bruce Street, Milwaukee, Wisconsin from 11:40 a.m. to 10:26 p.m.  Also on December 29, 2023, the Nissan Altima appeared to be parked on 638 West Bruce Street, Milwaukee, Wisconsin. from 10:43 a.m. until December 30, 2023, at 12:10 a.m.

105.    On December 27, 2023, case agents were conducting surveillance on Bruce Street due to the behavior seen in previous days.  At 10:45 a.m. case agents observed the Nissan Altima parked in front of 645 West Bruce Street, Milwaukee, Wisconsin.  Shortly after the BMW pulled next to the Nissan Altima.  SIMMONS exited the driver's seat of the Nissan Altima and got into the front passenger side of the BMW.  The BMW drove off eastbound on West Bruce Street and case agents did not follow the BMW.  At 10:00 p.m., case agents observed the BMW, pull in front of the Nissan Altima again.  SIMMONS got out of the passenger side and got into the Nissan Altima and left the area.  Case agents were able to follow the BMW to an address of 611 West National Avenue, Milwaukee, Wisconsin.  The BMW parked in a gated access.  Surveillance was terminated at 11:00 p.m. as the BMW did not leave.  On December 29, 2023, at 5:00 a.m. the BMW was observed parked in the parking lot again.

106.    On January 2, 2024, case agents conducted surveillance at 611 West National Avenue, Milwaukee, Wisconsin.  Case agents observed the BMW parked in the lot.  At approximately 9:30 a.m. SIMMONS is observed pulling into the non-secure parking lot and then went inside the building.  At approximately 9:35 a.m., SIMMONS left the area in the Nissan Altima and went to a gas station on South 2nd Street and West Bruce Street.  At approximately 9:41 a.m. SIMMONS then pulled back into the lot near 611 West National Avenue, Milwaukee, Wisconsin.  At approximately 10:52 a.m. the Nissan Altima left and parked on South 5th Street and Walker Street, Milwaukee, Wisconsin.  Case agents observed a short-term contact, hand to

hand with a black truck. SIMMONS then left the area. Based on my training, experience, and investigation into this ADTO, SIMMON short term contact was consistent with a drug transaction.

### H. ADTO's Telephone Number Data Usage

107. Case agents were reviewing call detail records for telephone numbers 414-610-1200, 414-313-7029, and 414-651-1315. Case agents observed that there were data usages on the entries, along with calls and texts for telephone numbers 414-610-1200, 414-313-7029, and 414-651-1315. In the entries that were used for data it documents that it is outgoing data that would show that the telephone number was using some sort of data, such as apps like Facebook, Instagram, CashApp and/or maps. From the information, it was consistent that the data was not telephone calls or texts. While reviewing the data entries, there was message information for each data entry. In the messaging portion of the entries, it notes that telephone numbers 414-610-1200, 414-313-7029, and 414-651-1315 are iPhones and each phone operates with a different operating system.

108. Telephone number 414-313-7029 indicated that the phone is an iPhone and is running operating system 15.6.1. Telephone number 414-610-1200 indicated that the phone is an iPhone and is running operating system 16.2. Telephone number 414-651-1315 indicated that the phone is an iPhone and is running operating system 17.1.2.

109. Based on my training and experience, I know that those engaged in criminal conduct, including drug trafficking, will often use iPhone data with Facetime, iMessages, etc. in an attempt to evade law enforcement detection.

### H. Prior Search Warrants

110. On November 21, 2023, Honorable Judge William E. Duffin authorized the electronic surveillance for telephone number 414-610-1200, which was then served on the Service Provide.

111.     On December 20, 2023, Honorable Judge William E. Duffin authorized the extension of the warrant for electronic surveillance for telephone number 414-610-1200, which was then served on the Service Provide.  Based on review of the court authorized electronic surveillance, case agents believe telephone number 414-610-1200 continues to provide valuable information as to the ADTO and their drug trafficking conduct.

112.     On December 20, 2023, Honorable Judge Stephen C. Dries authorized the use of GPS tracking for the Nissan Altima, which was then installed by law enforcement.  Based on review of the court authorized GPS tracking, case agents believe the tracking continues to provide valuable information as to the ADTO and their drug trafficking conduct.

113.     On January 5, 2024, Honorable Judge William E. Duffin authorized the use of GPS tracking for the BMW.  Case agents were not able to install the GPS tracker and have not observed TORRES using the BMW since January 6, 2024.

114.     On January 19, 2023, Honorable Judge William E. Duffin authorized the electronic surveillance for telephone number **414-610-8411**, which was then served on the provided US Cellular.  On January 23, 2024, case agents were notified by US Cellular that telephone number **414-610-8411** was ported (transferred service) to Verizon on January 22, 2024.  Case agents did not receive any data from US Cellular after this date.

## IV.     TECHNICAL BACKGROUND

115.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

Case 2:24-mj-00049-WED   Filed 01/26/24   Page 34 of 51   Document 1

116.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

117.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

118.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data,

also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

119.    As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

120.    I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

121.    Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

Case 2:24-mj-00490-WED ALED Filed 07/26/24 Page 36 of 51 Document 1

122.    Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

123.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

124.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent

or received by a particular device and other transactional records, in their normal course of business.

125.   In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Kenneth D. SIMMONS, Jaeheim H. ROBINSON, and other known and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Kenneth D. SIMMONS, Jaeheim H. ROBINSON, and other known and unidentified subjects acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V.   AUTHORIZATION REQUEST

126.   Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

127.   I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

128.   I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the

Case 2:24-mj-00049-WED ALED 07/26/24 Page 38 of 51 Document 1

Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

129.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Case 2:24-mj-00049-WSB SEALED Filed 07/26/24 Page 39 of 51 Document 1

# ATTACHMENT A

## Property to Be Searched

## Matter Number 2023R416

1.      Records and information associated with the cellular devices assigned call numbers **414-610-8411** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.      The Target Cell Phone.

Case 2:24-mj-00490-WED SEALED Filed 01/26/24 Page 40 of 44 Document 1

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2023R416**

I.       **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 22, 2024, to present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Case 2:24-mj-00049-WED Filed 01/26/24 Page 41 of 51 Document 1

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target

Page 41

Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated on today's date, for such information associated with the Target Cell Phone.

 c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

  i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

Case 2:24-mj-00049-WSB UNDER SEAL Filed 07/26/24 Page 43 of 51 Document 1

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846; and possession of a firearm in furtherance of drug trafficking, violation of Title 18, United States Code, Section 924(c), committed by Kenneth D. SIMMONS, Jaeheim H. ROBINSON, George TORRES and other known and unidentified subjects during the period of February 1, 2023 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information about the location of the cellular<br>telephone assigned call number 414-610-8411,<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.    24    MJ    49

Matter No. 2023R00416

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____02/09/2024_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____01/26/2024 at 9:55 a.m._____          *William E. Duffin*
                                                                                                        *Judge's signature*

City and state:   Milwaukee, WI                                    Honorable William E. Duffin, U.S. Magistrate Judge
                                                                                                *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

**Matter Number 2023R416**

1.      Records and information associated with the cellular devices assigned call numbers **414-610-8411** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.      The Target Cell Phone.

Case 2:24-mj-09049-WSB *SEALED* Filed 01/26/24 Page 47 of 53 Document 1-1

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2023R416**

### I.     Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 22, 2024, to present:

i.   Names (including subscriber names, usernames, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.   Local and long-distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.   Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"),

Case 2:24-mj-00049-DWC SEALED Filed 01/26/24 Page 54 of Document 1-1

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

Case 2:24-mj-00049-DWC *SEALED* Document 1-1 Filed 01/26/24 Page 49 of 51

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated on today's date, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

Case 2:24-mj-00049-DWC *SEALED* Filed 01/26/24 Page 50 of Document 1-1

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846; and possession of a firearm in furtherance of drug trafficking, violation of Title 18, United States Code, Section 924(c), committed by Kenneth D. SIMMONS, Jaeheim H. ROBINSON, George TORRES and other known and unidentified subjects during the period of February 1, 2023 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Case 2:24-mj-00049-DWC *SEALED* Filed 01/26/24 Page 51 of Document 1-1